UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
CIVIL DIVISION

| | |
|---|---|
| JANE DOE, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701, *et. seq.* |
| *Plaintiff,* | |
| v. | |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, Office of the Executive Secretary Department of Homeland Security 2707 Martin Luther King Jr. Ave SE Mail Stop 0525 Washington, DC 20528-0485 | Case No.: |
| U.S. DEPARTMENT OF HOMELAND SECURITY 245 Murray Lane, SW Mail Stop 0485 Washington, DC 20528-0485 | |
| TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement 500 12th Street, SW Mail Stop 5600 Washington, DC 20536-5600 | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT 500 12th Street, SW Mail Stop 5600 Washington, DC 20536-5600 | |
| *Defendants.* | |

**COMPLAINT**

1. Beginning in early April of 2025, the Trump Administration abruptly advised over a thousand foreign students studying at U.S. universities that their visas had been revoked, and records within the Student Exchange and Visitor Information System ("SEVIS") terminated.[1] In most cases, students were given no prior notice or clear explanation of the reason for the termination of their lawful status. Students with terminated SEVIS records, some just weeks from graduation, faced immediate invalidation of their legal immigration status

2. Plaintiff Jane Doe ("Plaintiff") has been a full-time PhD student at Yale University since 2023 and was most recently admitted the United States on F-1 student visa status on March 2, 2025. She is also a Teaching Assistant and receives a stipend from Yale pursuant to this position.

3. She previously held an F-1 visa to attend college in the United States between 2018 and 2022. Throughout the course of her studies, Plaintiff was regularly and lawfully admitted to the United States on an F-1 student visa.

4. On or around August 13, 2019, Plaintiff was charged with retail theft. On December 30, 2019, the Court entered a disposition of not guilty. Plaintiff provided records of this non-conviction to the Department of State when applying to renew her F-1 visa, and her visa was renewed without issue.

5. On April 10, 2025, Plaintiff received an email from the U.S. Department of State stating that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 13-Jul-2027 has been revoked under Section 221(i) of the United

---

[1] *See* Ashley Mowreader, Where Students Have Had Their Visas Revoked, INSIDE HIGHER ED (last updated April 15, 2025 at 9:00 AM), https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (showing 1,186 student visa revocations and SEVIS terminations as of 9:00 AM on Tuesday, April 15, 2025).

States Immigration and Nationality Act[.]" *See* Pl.'s Ex. 1, Letter from the U.S. Dep't of State dated April 10, 2025.

6. The correspondence further advised that "[r]emaining in the United States without lawful immigration status can result in fines, detention and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." *Id.*

7. This email is misleading as to Plaintiff's legal status following revocation of her visa. Student visa revocation alone does not terminate a student's lawful F-1 status, nor does it justify or legally support SEVIS record termination. While a nonimmigrant visa controls a noncitizen's admission into the United States, it does not dictate their continued stay.

8. On the same day, April 10, 2025, Plaintiff received an email from her Designated School Official ("DSO") at Yale stating that as of April 9, 2025, her SEVIS record had been terminated by the Department of Homeland Security ("DHS"; "Defendants"). *See* Pl.'s Ex. 2, Email from Yale DSO, Dated April 10, 2025. The message stated that the reason for her record termination was "OTHER - Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated." *Id.*

9. Plaintiff was advised by the school that she will lose her position as a Teaching Assistant and the funding for that position because of Defendants' termination of her SEVIS record. Plaintiff had also intended to hold a position as a Research Assistant at Yale during the summer of 2025.

10. Plaintiff received no advance warning or any other formal notification from DHS or ICE as to their intent to revoke her visa and terminate her SEVIS record.

11. Defendants' termination of Plaintiff's SEVIS record was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Neither F-1 visa revocation by the Department of State nor mere "identification in [a] criminal records check" are a basis by which DHS may unilaterally terminate a student's SEVIS record and lawful status in the United States.

12. Further, there was no new information available to Defendants that had not been previously disclosed to government agencies and would warrant the revocation of Plaintiff's visa and termination of her SEVIS account.

13. As a result of Defendants' unlawful termination of her SEVIS record, Plaintiff now faces the imminent possibility of unlawful presence, detention, deportation, and future visa restrictions.

**JURISDICTION**

14. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* and the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The U.S. District Court for the District of Connecticut has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the issue relates to a federal question. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201, and injunctive relief under the APA. The United States has waived its sovereign immunity as a judgment or decree may be entered against the United States under 5 U.S.C. § 702.

## VENUE

15. Venue in the U.S. District Court, District of Connecticut, is proper under 28 U.S.C. § 1391(e) because Plaintiff resides in New Haven, Connecticut, which is geographically located within this judicial district. Moreover, all Defendants in this matter are officers and employees of the United States acting within their official capacities and, as such, Plaintiff may seek judicial remedies in the jurisdiction of her residency.

## EXHAUSTION

16. There are no remedies or processes for Plaintiff to exhaust. On April 10, 2024, Plaintiff was advised via email from the Department of State that her F-1 visa had been revoked. On April 9, 2025, Plaintiff's SEVIS record was terminated without warning or notice to Plaintiff or her school. There is no administrative appeal process to any government agency to challenge the termination of her SEVIS record. Therefore, the termination of the SEVIS record constitutes a final agency action for purposes of APA review.

## PARTIES

17. Plaintiff, Ms. Doe, is an international student currently enrolled as a PhD student at Yale University. She is also a Teaching Assistant, and receives a stipend paid by Yale. She resides in the greater New Haven, Connecticut area. Plaintiff, as the sole litigant in this case, had her SEVIS record unlawfully terminated by the named Defendants in this action and this unlawful act forms the basis of this dispute.

18. Defendant, Kristi Noem, in her official capacity, is the Secretary of the Department of Homeland Security ("DHS"). Defendant DHS is the agency responsible for implementing the Immigration and Nationality Act through a series of sub-agencies, including U.S. Immigration and Customs Enforcement and U.S. Customs and Border Protection.

19. Defendant, Immigration and Customs Enforcement ("ICE") is a sub-agency within DHS and operates effectively as a law enforcement division that responds to foreign nationals physically present in the United States without lawful immigrant or non-immigrant status. ICE manages the SEVIS system and is tasked with monitoring and terminating SEVIS records.

20. Defendant Todd Lyons, in his official capacity, is the current Acting Director of U.S. Immigration and Customs Enforcement. Defendant Lyons has the authority over ICE operations and enforcement of certain immigration laws within the United States. Defendant Lyons and ICE are responsible for the termination of Plaintiff's SEVIS record.

## STATEMENT OF FACTS

21. Plaintiff is a citizen and national of Mexico who is physically present in the United States pursuant to a lawfully issued F-1 student visa. Plaintiff is a PhD student at Yale University. She has also held a Teaching Assistant position, for which she received a stipend. Plaintiff had also intended to hold a position as a Research Assistant at Yale during the summer of 2025.

22. Since 2023, Plaintiff has been enrolled at the University and has maintained a course load sufficient to qualify as a full-time student. At no time during her studies has she been unlawfully employed or otherwise violated the terms of her F-1 student visa.

23. In the summer of 2019, Plaintiff was charged with the criminal offense of retail theft. This charge was dropped, and the Court entered a disposition of not guilty in December of 2019.

24. Plaintiff has no criminal conviction based on this allegation, nor any other criminal record anywhere else in the world.

25. Plaintiff documented the dismissal of the charge and provided this information to the Department of State when applying for renewal of her F-1 student visa. This renewal was

granted without issue. Plaintiff most recently renewed her visa on July 19, 2023. Her visa was valid until July 13, 2027.

26. On April 10, 2025, Plaintiff received an email from the Department of State stating that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 13-Jul-2027 has been revoked under Section 221(i) of the United States Immigration and Nationality Act[.]"

27. The correspondence further advised that "Remaining in the United States without lawful immigration status can result in fines, detention and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin."

28. While the email did not expressly tell Ms. Doe that she must leave or by what date she would need to depart the United States, it heavily implied that remaining in the United States would entail adverse immigration consequences.

29. This email was deliberately coercive and misleading in its wording and message in an effort to intimidate Ms. Doe into leaving the country. A student already in the country may remain in the United States even after their F-1 visa is revoked, provided that they remain in lawful F-1 status and maintain their SEVIS record. The consequence for the revocation of an F-1 visa is generally only that the individual must re-apply for the visa in order to re-enter the United States after a departure.

30. Further, there was no new information available to Defendants that had not been previously disclosed to government agencies and would warrant the revocation of Plaintiff's visa.

31. On the same day, April 10, 2025, Plaintiff received an email from her Designated School Official ("DSO") at Yale stating that as of April 9, 2025, her SEVIS record had been terminated by the Defendants. The message stated that the reason for her record termination was "OTHER - Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated."

32. Plaintiff was informed that the university did not make the decision to terminate the SEVIS record.

33. Plaintiff has received no formal SEVIS termination notice from ICE or any other agency.

34. At all times, Plaintiff properly maintained her status for the purposes of continued eligibility and SEVIS verification.

## STATEMENT OF LAW

35. Congress established the process and the statutory basis for student visas under 8 U.S.C. 101(a)(15)(F)(i), which holds that foreign national students be enrolled in a full-time course of study in order to qualify for an F-1 student visa. F-1 student visas are typically applied for and issued at U.S. Embassies and Consulates abroad; however, such visas can also be obtained inside the United States with the filing of a Form I-539, Application for Change of Status.

36. Student visas are non-immigrant visas that allow a foreign student to enter the United States for the purpose of pursuing their education at a U.S. college or university. *See* INA 101(a)(15)(F). Students seeking an F-1 visa are required to demonstrate their approved admission to a college or university; document their ability to fund their studies and meet their basic needs; demonstrate the intent to depart the United States at the conclusion of their

studies; and, during their period of authorized stay, verify their continued matriculation in their selected educational program. *See id.*; 9 FAM 402.5-5(c); 22 CFR § 41.61.

37. A prospective student must have a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a Student and Exchange Visitor Program ("SEVP")-certified school to be issued an F-1 student visa. Only an SEVP-certified school can issue a Form I-20 to students who have been accepted for enrollment. 9 FAM 402.5-5(D)(1).

38. When issued outside the United States, the foreign national with an approved F-1 student visa enters the United States and is granted admission for the duration of their status (as noted at entry by Customs and Border Protection as "D/S") as long as the foreign national continues to meet the requirements established in the regulations. F-1 student visa holders have minimal requirements for maintaining lawful status, which generally includes maintaining their full course of study and avoiding any unauthorized employment. 8 C.F.R. §214.2(f). While a nonimmigrant visa controls a noncitizen's admission into the United States, it does not dictate their continued stay.

39. Monitoring of F-1 student visas and issues related to student compliance is generally delegated to Designated School Officials ("DSOs") who review student compliance with the terms of the F-1 status using an interface with ICE called the Student and Exchange Visitor Information System ("SEVIS"). SEVIS is a centralized database which allows ICE officials "to track and monitor schools…and F, M, and J nonimmigrants while they visit the United States and participate in the U.S. education system."[2]

40. SEVIS is a "web-based system for maintaining information on nonimmigrant students and exchange visitors in the United States." *Id.;* implementing terms of IIRIRA of 1996; and,

---

[2] *See* ICE.gov, "Background SEVP and SEVIS" available at https://www.ice.gov/sevis (last accessed April 12, 2025).

9

USA PATRIOT Act, 2001. SEVIS allows DHS to "assure proper reporting and record keeping by schools and exchange visitor programs" and "provides a mechanism for student and exchange visitor status violators to be identified so that appropriate enforcement" is taken (i.e., denial of admission, denial of benefits or removal from the United States). *Id.*

41. Pursuant to 8 C.F.R. §214.3(g)(2), DSOs must report through SEVIS when a student fails to maintain status. SEVIS termination is a possible outcome for foreign nationals who fail to continue in a course of study and any outcome is initiated by ICE pursuant to the corresponding regulations. DHS regulations acknowledge two distinct ways a student may fall out of status, namely: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status." 8 C.F.R. §§ 214.2(f); 8 C.F.R. §214.1(d).

42. Failure to maintain status involves circumstances where an F-1 student visa holder fails to comply with the requirements of the visa under 8 C.F.R. §§ 214.2(f) (i.e., failing to maintain a full course of study) or otherwise violating the terms of their student visa as outlined further in 8 C.F.R. §§ 214.1(e)–(g) (i.e., unauthorized employment, providing false information to a government agency, or being convicted of a crime of violence with a potential sentence of more than a year).

43. Termination of status by DHS involves circumstances limited to those outlined in 8 C.F.R. §214.1(d), namely: (1) a previously granted waiver under INA §212(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. Indeed, neither DHS nor ICE can unilaterally terminate an F-1 student visa at their discretion. *See Fang v. Dir. United States Immigr. & Customs Enforcement*, 935 F.3d 172, 185 fn. 100 (3d Cir. 2019).

44. Similarly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.[3] ICE Policy Guidance specifically asserts that "visa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id.*

45. While the revocation of a visa precludes an F-1 student visa holder from leaving and then re-entering the United States without first obtaining a new visa, it provides no fundamental change in status if the student does not depart the United States. Should the student remain in the United States with a SEVIS record terminated, he or she would begin to accrue unlawful presence.

46. Notably, another consequence of an F-1 student visa revocation is that the revocation could be used as a ground for initiating removal proceedings against a student before the Executive Office of Immigration Review. When revocation is the basis of removal proceedings, the foreign national student is subject to notice and provided with due process rights to offer any defenses to deportation. *See* 8 U.S.C. §1227(a)(1)(B); 8 U.S.C. §1201(i) (immigration court can review visa revocation in removal proceedings).

47. Indeed, an Immigration Judge is vested with authority to dismiss removal proceedings when a visa is revoked where the student is able to demonstrate their ability to remain in valid status. *See* 8 C.F.R. §1003.18(d)(ii)(B).

48. The APA authorizes courts to "postpone the effective date of an agency action or to preserve status or rights pending conclusion" of APA proceedings, "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. There is "substantial overlap" between the factors considered in analyzing a stay under the APA and a preliminary injunction. *Seafreeze Shoreside, Inc. v. Dept. of Interior*, 2023 WL 3660689, at *3 (D. Mass. May 25, 2023) (citing

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

*Nken v. Holder*, 556 U.S. 418, 435–36 (2009)); *New York v. U.S. Dep't of Homeland Security*, 408 F.Supp. 3d 334, 342 (S.D.N.Y., 2019) (granting a preliminary injunction and APA stay and analyzing both under the same four-factor test).

49. In general, a plaintiff in the Second Circuit who is seeking a prohibitory preliminary injunction "maintaining the status quo" must establish that 1) she is likely to succeed on the merits, 2) she is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of equities tips in her favor, and 4) an injunction is in the public interest. *See Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2nd Cir. 2024) (citing *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023)).

50. If a plaintiff seeks a "mandatory injunction" requesting that the Court "modify the status quo," then the plaintiff must "show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm." *Id.*

51. When the government is the party opposing the injunction, the final two factors merge. *Nken*, 556 U.S. at 435–36.

52. A stay under 5 U.S.C. § 705 does not expressly require that the movant post a bond. *See* 5 U.S.C. § 705 ("the reviewing court ... may issue all necessary and appropriate process ... to preserve status or rights pending conclusion of the review proceedings").

53. Plaintiff seeks a prohibitory APA stay enjoining the revocation of her student visa and ordering Defendants to restore her SEVIS record, therefore placing her back in lawful status during the pendency of this litigation and precluding Defendants from issuing a Notice to Appear or detaining her for alleged unlawful presence. However, Plaintiff can meet the heightened standard required of a mandatory injunction, as she can show a substantial

likelihood of success on the merits of her claim and makes a strong showing of irreparable harm.

54. As Defendants terminated Plaintiff's SEVIS record without any legal authority, Plaintiff is likely to succeed on the merits of her claim that Defendants' action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

55. As to the second factor, "a strong showing of irreparable harm," Plaintiff has spent the last two years working towards a doctoral degree at Yale University, a substantial investment of time, effort, and money. Yale has already informed Plaintiff that she will lose her teaching assistant position and funding due to Defendants' termination of her SEVIS record. Plaintiff had also intended to hold a position as a Research Assistant at Yale during the summer of 2025, which she will presumptively lose as well. Her legal status in the United States is now uncertain due to Defendants' unlawful act, and she is at imminent risk of unlawful presence, detention, and deportation. Accumulated unlawful presence could preclude the future grant of an F-1 visa and continuation of her program even if she were to succeed on the merits of the present litigation.

56. Moreover, as to factor (3) Plaintiff would suffer the loss of years of work and substantial economic investment into her degree if the Government's order is not enjoined, while there would be little negative effect on public interest with the issuance of this injunction. Plaintiff is a talented and productive PhD student with no record of criminal convictions. She is not a danger to society and indeed is an asset to her school and academic community.

57. Because Plaintiff can show a substantial likelihood of succeed on the merits of her claim and makes a strong showing that she will suffer irreparable harm in the absence of a stay and/or

injunction, this Court should grant a temporary injunction on the revocation of her student visa and SEVIS record under 5 U.S.C. § 705.

## RELIEF

### COUNT I—Unlawful Termination of SEVIS Record
### Violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*

58. Plaintiff re-alleges and incorporates by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

59. Under 5 U.S.C. § 702 and § 704, Plaintiff has been aggrieved by an agency decision for which there is no additional remedy.

60. Defendants erred in terminating Plaintiff's SEVIS record after the revocation of her F-1 student visa. Defendants have exercised no statutory or regulatory authority to terminate Plaintiff's SEVIS record based solely on visa revocation.

61. Plaintiff seeks review by this Court pursuant to 5 U.S.C. §§ 701-706 and maintains that the decision to terminate Plaintiff's SEVIS record was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

62. Plaintiff seeks declaratory and injunctive relief to overturn the unlawful decision of a United States agency as being arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### COUNT II—Violation of Procedural Due Process
### Violation of the Administrative Procedure Act 5 U.S.C. § 701, *et seq.*

63. Plaintiff re-alleges and incorporates by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

64. Under 5 U.S.C. § 706(a), Plaintiff has been aggrieved by an agency decision "contrary to a constitutional right, power, privilege or immunity." 5 U.S.C. 706(2)(B).

65. Defendants improperly terminated Plaintiff's SEVIS record without formal notice and without providing Plaintiff any reasonable basis for the termination. Moreover, Plaintiff was provided with no procedural process or reasonable opportunity to effectively respond to the termination of her SEVIS record.

66. Plaintiff seeks declaratory and injunctive relief to overturn the unlawful decision of a United States agency as being arbitrary and capricious.

### COUNT III—Violation of the Fifth Amendment of the United States Constitution

67. Plaintiff re-alleges and incorporates by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

68. Under the Due Process Clause of the Fifth Amendment, the government is constrained from acting in a way that deprives individuals of life, liberty, or protected property interests without due process of law.

69. At minimum, procedural due process requires notice, the opportunity to be heard, and a decision by a neutral decision-maker. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976).

70. When a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, including by maintaining a full courseload and avoiding unlawful employment, the continued registration of that student in SEVIS is governed by specific and mandatory regulations.

71. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student,

Plaintiff has a constitutionally protected property interest in her SEVIS registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

72. No notice or opportunity to be heard was provided by Defendants when terminating Plaintiff's SEVIS record, in which she has a constitutionally protected property interest.

73. Defendants terminated Plaintiffs' SEVIS record based on improper grounds without prior notice and without providing Plaintiffs with an opportunity to respond. The failure to provide notice of the facts that allegedly formed the basis for Plaintiff's SEVIS termination is a violation of Plaintiff's right to due process under the Fifth Amendment.

**WHEREFORE**, Plaintiff requests the following relief from the U.S. District Court:

A. Grant a preliminary injunction ordering Defendants restore Plaintiff's SEVIS record to prevent ongoing harm to Plaintiff, pending resolution of this litigation;

B. Grant a stay of Defendants' termination of Plaintiff's SEVIS record pursuant to 5 U.S.C. § 705, pending resolution of this litigation;

C. Mandate that Defendants reinstate Plaintiff's SEVIS record within ten days such that there is no demonstrated lapse in her SEVIS record within the SEVP and SEVIS systems;

D. Compensate Plaintiff for the attorney fees and costs of this action in accordance with the Equal Access to Justice Act; and

E. Grant Plaintiff any and all other relief this court deems equitable and just; OR, in the alternative,

F.  Order the Defendants to restore Plaintiff's SEVIS record under The Privacy Act, 5 U.S.C. § 552a(g)(1)(A)-(D) and § 552a(g)(2)(A), and assess appropriate attorney's fees and any other monetary relief this Court deems appropriate against the United States under 552a(g)(2)(A)-(B), and,

G.  Grant Plaintiff any and all other relief this court deems equitable and just.

Respectfully submitted for the Plaintiff,

/S/ Michael J. Boyle
Michael J. Boyle, Esq.
CT Bar No. 408629
Attorney for Plaintiff
Law Offices of Michael Boyle
169 Montowese Ave., PO Box 335
North Haven, CT 06473
Phone: (203) 239-2200
Fax: (203) 985-8207
mboyle@immigrantcenter.com

/S/ Stephen J. Antwine
Stephen J. Antwine, Esq.
PA Bar No. 309379
Attorney for Plaintiff *(Pro Hac Vice Pending)*
Green & Spiegel, LLC
1524 Delancey Street, Suite 4
Philadelphia, Pennsylvania 19101
Phone: (215) 395-8959
Fax: (215) 330-5311
santwine@gands-us.com