# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FLOR PARRA RODRIGUEZ,
    Plaintiff,

      v.

KRISTI NOEM, et al.,
    Defendants.

No. 3:25-cv-616 (SRU)

## PRELIMINARY INJUNCTION ORDER

On April 18, 2025, Plaintiff Flor Parra Rodriguez ("Parra Rodriguez") filed a complaint against Secretary of the U.S. Department of Homeland Security Kristi Noem, U.S. Immigration and Customs Enforcement Acting Director Todd Lyons, the U.S. Department of Homeland Security, and U.S. Immigration and Customs Enforcement (collectively, "Defendants"). *See generally* Doc. No. 1.  Parra Rodriguez's complaint raises three claims: (1) unlawful termination of her SEVIS record in violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*; (2) violation of procedural due process in violation of the APA, 5 U.S.C. § 701, *et seq.*; and (3) violation of the Fifth Amendment of the United States Constitution.  Am. Compl., Doc. No. 15 at 14-16.

That same day, Parra Rodriguez moved for a temporary restraining order ("TRO"), preliminary injunction, or stay under 5 U.S.C. § 705 that:  (1) Orders Defendants to restore Parra Rodriguez's SEVIS record to prevent ongoing harm to her and set aside their termination decision, pending resolution of this litigation; (2) Enjoins or stays Defendants from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against Parra Rodriguez or detaining her

due to her immigration status; and (3) Enjoin[s] Defendants from unlawfully terminating Parra Rodriguez's F-1 student status under the SEVIS system.  *See* Doc. No. 4 at 1; Doc. No. 4-1 at 6.

For the following reasons, Parra Rodriguez's motion for a preliminary injunction is **granted**, **Doc. No. 4.**

## I.    Background

Congress enacted 8 U.S.C. § 1101(a)(15)(F)(i) to provide the statutory basis and process for obtaining student visas.  *See* Am. Compl., Doc. No. 15 ¶ 35.  Student visas, or F-1 visas, allow foreign students to attend a U.S. college or university under certain conditions, including: (1) pursuing "a full course of study" in an approved academic institution; (2) possessing "sufficient funds to cover expenses while in the United States[;]" and (3) intending "to depart on termination of student status."  22 C.F.R. § 41.61; 8 C.F.R. § 214.1(a)(2) (classing nonimmigrant student visas under 8 U.S.C. § 1101(a)(15)(F)(i) as "F-1" visas).  Additionally, according to the Foreign Affairs Manual ("FAM"), the "Student Exchange and Visitor Information System (SEVIS) is designed to monitor the academic progress, movement, etc. of foreign students . . . from entry into the United States to departure."  9 FAM 402.5-4(A).[1]  "The Student and Exchange Visitor Program (SEVP) manages SEVIS."  *Id.*  A division within Immigration and Customs Enforcement ("ICE") administers the SEVP.  *Id.*

---

[1] "The [United States State] Department articulates official guidance, including procedures and policies, on matters relating to Department management and personnel in the Foreign Affairs Manual (FAM) and the Foreign Affairs Handbook (FAH) series. . . . The FAMs and FAHs that are publicly available are located on the Department's public website, at https://fam.state.gov/."  22 C.F.R. § 5.5.  *See also* U.S. Dep't of State, *Foreign Affairs Manual: Public*, https://fam.state.gov/ (last visited May 1, 2025) ("The Foreign Affairs Manual (FAM) and associated Handbooks (FAHs) are a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies. The FAM (generally policy) and the FAHs (generally procedures) together convey codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates.").

"[T]he SEVIS record is the definitive record of student or exchange visitor status and visa eligibility."  9 FAM 402.5-4(B).  A foreign student's SEVIS record determines whether the student is issued a visa.  *Id.* ("You should issue [F-1 visas] only to visa applicants whose SEVIS record indicates a SEVIS status of 'initial' or 'active.'").  All foreign students, except those sponsored by the U.S. government, must pay the SEVIS fee before interviewing for a visa.  9 FAM 402.5-4(C); U.S. Immigr. & Customs Enf't, *I-901 SEVIS Fee Frequently Asked Questions*, https://perma.cc/23VM-5QK7 (last visited May 1, 2025) (listing the SEVIS fee for an F-1 visa as $350).  To maintain their status, foreign students with F-1 visas must work toward completing a "full course of study" and abide by certain employment guidelines.  8 C.F.R. §§ 214.2(f)(6), (9).

Parra Rodriguez is a citizen and national of Mexico physically present in the U.S. and currently a full-time Ph.D. student at Yale University ("Yale").  Am. Compl., Doc. No. 15 ¶¶ 2, 21; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Yale employs her as a teaching assistant, and she intends to work as a research assistant at Yale during the summer of 2025.  Am. Compl., Doc. No. 15 ¶¶ 2, 21; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Most recently, she renewed her F-1 visa in July 2023 after Yale accepted her as a Ph.D. student; her visa was valid until July 13, 2027. Am. Compl., Doc. No. 15 ¶ 2; Doc. No. 4-1 at 6-7.  Parra Rodriguez was last admitted to the United States on F-1 student visa status on March 2, 2025.  Am. Compl., Doc. No. 15 ¶ 2; Doc. No. 4-1 at 6-7; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Parra Rodriguez alleges that, "at all times," she has "properly maintained her status" by sustaining "a course load sufficient to qualify as a full-time student," not being unlawfully employed, and not "otherwise violat[ing] the terms of her F-1 student visa."  Am. Compl., Doc. No. 15 ¶¶ 22, 34.  The Defendants have not suggested otherwise.

Between 2018 and 2022, Parra Rodriguez held an F-1 visa to attend college in the United States. *Id.* ¶ 3; Parra Rodriguez Aff., Doc. No. 25 ¶ 5. Parra Rodriguez alleges she was regularly and lawfully admitted to the United States on an F-1 student visa throughout her studies. Am. Compl., Doc. No. 15 ¶ 3. Although she was charged with retail theft on or around August 13, 2019, the charge was dropped and the court "entered a disposition of not guilty" on December 30, 2019. *Id.* ¶¶ 4, 23; Parra Rodriguez Aff., Doc. No. 25 ¶¶ 6-7. Therefore, Parra Rodriguez "has no criminal conviction" based on that charge. Am. Compl., Doc. No. 15 ¶ 24. Further, Parra Rodriguez "provided records of this non-conviction to the Department of State when applying to renew her F-1 visa, and her visa was renewed without issue." *Id.;* Parra Rodriguez Aff., Doc. No. 25 ¶ 8.

On April 10, 2025, Parra Rodriguez received an email from the U.S. State Department stating that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 13-Jul-2027 has been revoked under Section 221(i) of the United States Immigration and Nationality Act[.]" Am. Compl., Doc. No. 15 ¶¶ 5, 26; Parra Rodriguez Aff., Doc. No. 25 ¶ 9. The email also notified Parra Rodriguez that:

> Remaining in the United States without lawful immigration status can result in fines, detention and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

Am. Compl., Doc. No. 15 ¶¶ 6, 27; Parra Rodriguez Aff., Doc. No. 25 ¶ 11. On the same day, Parra Rodriguez received an email from her "Designated School Official" ("DSO") at Yale. Am. Compl., Doc. No. 15 ¶¶ 8, 31; Parra Rodriguez Aff., Doc. No. 25 ¶ 12. Her DSO advised Parra Rodriguez that, as of April 9, 2025, her "SEVIS record had been terminated by the Department of Homeland Security" ("DHS"). *Id.* In the email, her DSO stated the reason for Parra

4

Rodriguez's SEVIS record termination was "[i]ndividual identified in [a] criminal records check and/or has had their visa revoked. SEVIS record has been terminated." *Id.*

Parra Rodriguez was informed that Yale did not make the decision to terminate the SEVIS record. Am. Compl., Doc. No. 15 ¶ 32; Parra Rodriguez Aff., Doc. No. 25 ¶ 12. Nonetheless, Yale advised Parra Rodriguez that, effectively immediately, she would "lose her position as a Teaching Assistant and the funding for that position because of Defendants' termination of her SEVIS record." Am. Compl., Doc. No. 15 ¶ 9. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 13.

DHS and ICE provided "no advance warning or any other formal notification . . . [of] their intent to revoke her visa and terminate her SEVIS record." Am. Compl., Doc. No. 15 ¶ 10. Notably, Parra Rodriguez "received no formal SEVIS [record] termination notice from ICE or any other agency." *Id.* ¶ 33.

Parra Rodriguez alleges that "there was no new information available to Defendants that had not been previously disclosed to government agencies and [warranting] the revocation of [her] visa and termination of her SEVIS account." *Id.* ¶ 12, 30. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 10 ("[T]he Department of State already knew about this charge and result. I have had no other contact with the authorities in the United States since that incident over five years ago."). Further, Defendants' termination of Parra Rodriguez's SEVIS record subjects her to "the imminent possibility of unlawful presence, detention, deportation, and future visa restrictions." Am. Compl., Doc. No. 15 ¶ 13. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 14.

## II.    Procedural History

On April 18, 2025, Parra Rodriguez filed her complaint under the pseudonym Jane Doe and moved for injunctive relief. *See generally* Docs. No. 1, 4. On April 19, 2025, I issued an

order to preserve jurisdiction.  Doc. No. 7.  That order states that:  "the Defendants, their officers, agents, servants, employees, and attorneys, as well as all persons in active concert or participation with them, are enjoined from removing the plaintiff from the District of Connecticut or deporting the plaintiff from the United States. . . .  This order shall remain in effect until further order of the court, to preserve this court's jurisdiction to consider the merits of the case."  *Id.* at 3.

On April 21, 2025, I held a hearing to discuss Parra Rodriguez's anonymity and a briefing schedule for the Defendants' response to Parra Rodriguez's motion for a temporary restraining order, preliminary injunction, or stay.  After the hearing, Parra Rodriguez filed an amended complaint in which she disclosed her identity on April 21, 2025.  Doc. No. 15.

On April 24, 2025, I notified the parties that, at the April 29 hearing on Parra Rodriguez's motion, I would consider whether to grant a temporary restraining order, preliminary injunction, or stay.  Doc. No. 22.

During the April 29 hearing, the parties confirmed that Defendant DHS restored Parra Rodriguez's SEVIS record on April 26, 2025.  Additionally, her teaching assistant position was reinstated due to her SEVIS record reactivation.  However, there remains a gap in Parra Rodriguez's SEVIS record during the time after Defendants terminated it, from April 9, 2025 to April 26, 2025.

## III.    Standard of Review

Federal Rule of Civil Procedure 65 requires courts to give notice to the adverse party before issuing a preliminary injunction; a court may issue a TRO without written or oral notice. Fed. R. Civ. P. 65(a)-(b).  Every preliminary injunction and TRO must: "[] state the reasons why it issued; [] state its terms specifically; and [] describe in reasonable detail—and not by referring

to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).

"It is well established that in this Circuit the standard for [entering] a TRO is the same as for a preliminary injunction."  *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases).  To obtain a preliminary injunction, the plaintiff must show: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  A movant seeking to demonstrate a likelihood of success on the merits "need not show that success is an absolute certainty.  He need only make a showing that the probability of his prevailing is better than fifty percent.  There may remain considerable room for doubt."  *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on unrelated grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  Additionally, plaintiffs "need not show that there is a likelihood of success on the merits of all of their claims for relief.  Rather, they must show a likelihood of success on the merits of at least one of their claims."  *Westchester Legal Servs., Inc. v. Westchester Cnty.*, 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985).

However, where a movant seeks a "mandatory preliminary injunction that alters the status quo," rather than a "prohibitory injunction seeking only to maintain the status quo," the burden of proof is more stringent.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).  In that instance, a movant must demonstrate a "clear" or "substantial" likelihood of success on the merits.  *See Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

## IV.    Discussion

A.  <u>Whether Parra Rodriguez is likely to succeed on the merits of her underlying claims</u>

Parra Rodriguez's complaint brings three counts:  (1) unlawful termination of her SEVIS record in violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*; (2) violation of procedural due process in violation of the APA, 5 U.S.C. § 701, *et seq.*; and (3) violation of the Fifth Amendment due process clause of the United States Constitution.  Am. Compl., Doc. No. 15 at 14-16.  For the following reasons, I find she is likely to succeed on the merits of count one of her complaint.  Because Parra Rodriguez only needs to show she is likely to succeed on one claim, I do not analyze whether she is likely to succeed on her remaining two claims.  *Westchester Legal Servs., Inc.*, 607 F. Supp. at 1382.

1.  *Unlawful termination of her SEVIS record in violation of the APA, 5 U.S.C. § 701,* et seq.

F-1 visa revocation and SEVIS record termination are separate processes with distinct preconditions.  ICE policy guidance states that "[v]isa revocation is not, in itself, a cause for termination of [a] student's SEVIS record."  Student and Exchange Visitor Program – Policy Branch, U.S. Immigr. & Customs Enf't, U.S. Dep't of Homeland Sec., SEVP Policy Guidance 1004-04 – Visa Revocations 3 (June 7, 2010), https://perma.cc/ZM2S-R6Z6 (last visited May 1, 2025) (Attached as Exhibit A to this Order.).  Revoking a student's F-1 visa does not automatically require the student to leave the country or lead to them accumulating unlawful presence.  A student present in the United States under an F-1 visa may remain lawfully present in the United Status even if their F-1 visa is revoked so long as they "maintain status."  22 C.F.R. § 41.122 (listing the grounds for visa revocation but not stating a revoked visa equates to unlawful presence).  However, a student whose visa is revoked may be denied re-entry if they leave the United States and attempt to return.

There are two ways a student's SEVIS record can be lawfully terminated:  if a student fails to "maintain their status" or if the agency terminates their status.  8 C.F.R. § 214.2(f)(5); 8 C.F.R. § 214.1(d).  "Maintaining status" refers to a nonimmigrant student's "F-1 status."  *See* 8 C.F.R. § 214.1(a)(2)-(3) (designating nonimmigrant student classification as "F-1" and discussing maintenance of status).  Whether a student maintains their F-1 status is entirely separate from whether a student obtains or holds an F-1 visa.  *Compare* 8 C.F.R. § 212.1 (describing a "valid unexpired visa" as a "documentary requirement") *with* 8 C.F.R. § 214.2(f)(5) ("Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students . . . .").  An F-1 visa is solely a document used to enter the United States.  U.S. Dep't of State, Bureau Consular Affs., *What is a U.S. Visa?*, https://perma.cc/8SEJ-6TAS (last visited May 1, 2025) ("A citizen of a foreign country who seeks to enter the United States generally must first obtain a U.S. visa, which is placed in the traveler's passport, a travel document issued by the traveler's country of citizenship.").

To maintain their status, an F-1 visa holder must "pursu[e] a full course of study at an educational institution certified by SEVP for attendance by foreign students" and not "violate[] the terms of their student visa."  8 C.F.R. § 214.2(f); Doc. No. 4-1 at 11-12 (citing 8 C.F.R. §§ 214.1(e)-(g)).  F-1 visa terms prohibit: (1) engaging in unauthorized employment; (2) providing false information; and (3) being convicted for a crime of violence "for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)."  8 C.F.R. §§ 214.1(e)-(g).

Defendants may terminate an F-1 visa holder's *status* in three defined scenarios.  A nonimmigrant student's "status . . . shall be terminated by the revocation of a waiver authorized

on his or her behalf under section 212(d)(3) or (4) of the Act;[2] by the introduction of a private bill to confer permanent resident status on such [nonimmigrant student]; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Neither party alleges that any of those three situations apply to Parra Rodriguez.[3] *See* Doc. No. 4-1 at 13 ("Plaintiff was not previously granted a waiver under INA § 212(d)(3) or (4), no private bill to confer her with lawful permanent residence has been introduced in Congress, and DHS has not published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for the termination."); Doc. No. 26 at 17.

Pursuant to the APA, a court reviewing an agency's decision "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2)(A). Parra Rodriguez argues that "Defendants' termination of her SEVIS record was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." Doc. No. 4-1 at 11. The only explanation Defendants provided for why they terminated Parra Rodriguez's SEVIS record was that she was "identified in [a] criminal records check and/or has had [her] visa revoked." Am. Compl., Doc. No. 15 at ¶¶ 8, 31; Parra Rodriguez Aff., Doc. No. 25 ¶ 12.

---

[2] Those provisions refer to certain situations in which the Attorney General may waive the application for the "[t]emporary admission of nonimmigrants." 8 U.S.C. § 1182(d); Visas: Waiver for Ineligible Nonimmigrants, 84 Fed. Reg. 19712 (May 6, 2019) (to be codified at 22 C.F.R. pt. 40) ("Section 212(d)(3)(A)(i) of the INA, 8 U.S.C. § 1182(d)(3)(A)(i), authorizes the Department of Homeland Security to approve a waiver covering most grounds in section 212(a) of the INA, if the Secretary of State or a consular officer recommends that the alien be admitted temporarily into the United States, despite the inadmissibility.").

[3] Defendants cite 8 U.S.C. § 1201(i) for the proposition that it provides reasons for terminating nonimmigrant status. Doc. No. 26 at 17. However, section 1201(i) concerns revoking visas and other entry documents. As explained above, and as Defendants concede, visa revocation is entirely separate from F-1 status and SEVIS record termination.

The pertinent regulations and statutes do not permit Defendants to lawfully terminate Parra Rodriguez's SEVIS record.  There are no facts demonstrating Parra Rodriguez has failed to maintain her F-1 visa status:  she maintains a full course of study, works only in authorized employment positions, and has no criminal convictions.  Parra Rodriguez does not have a criminal conviction preventing her from "maintaining her status," and there are no other applicable grounds for terminating her SEVIS record.  8 C.F.R. § 214.1(d) (delineating the reasons for which a student's F-1 status may be revoked).  Her present F-1 status was determined and her F-1 visa granted in July 2023, well after the 2019 criminal charge was dropped, she was pronounced not guilty, and the State Department was notified of her criminal case disposition. Am. Compl., Doc. No. 15 at ¶¶ 2-4, 23-25; Parra Rodriguez Aff., Doc. No. 25 ¶¶ 6-8.  Further, F-1 visa revocation is not grounds for SEVIS record termination.  Ex. A, Student and Exchange Visitor Program – Policy Branch, U.S. Immigr. & Customs Enf't, U.S. Dep't of Homeland Sec., SEVP Policy Guidance 1004-04 – Visa Revocations 3 (June 7, 2010), https://perma.cc/ZM2S-R6Z6 (last visited May 1, 2025).

Defendants argue that the Privacy Act precludes this court's review of Parra Rodriguez's APA claim because the Privacy Act triggers the sovereign immunity waiver exception in section 702 of the APA.  Doc. No. 26 at 2, 10-15.  *See* 5 U.S.C. § 702 ("Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.").  Parra Rodriguez does not assert a Privacy Act violation; in fact, she *cannot* sue under the Privacy Act because she is a nonimmigrant student. [4]  5 U.S.C. § 552a ("[T]he term 'individual' means a citizen of the United States or an alien lawfully admitted

---

[4] Parra Rodriguez does include a prayer for relief under The Privacy Act in her amended complaint.  Am. Compl., Doc. No. 15 at 17.  That prayer is ineffectual because she does not allege Defendants violated the Privacy Act. *Id.* at 14-16.

for permanent residence . . . .").  Further, she does not seek to amend her SEVIS record, but

rather for Defendants to fully reinstate it with no gaps in status resulting from Defendants'

unlawful termination of it.  *F.A.A. v. Cooper*, 566 U.S. 284, 310 n.4 (2012) ("[I]njunctive relief

is available under the [Privacy] Act only for a limited category of suits: suits to amend a record

and suits for access to a record."); *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999) ("[T]he

Privacy Act does not allow a court to alter records that accurately reflect an administrative

decision, or the opinions behind that administrative decision."); *Bishop v. Off. of Pers. Mgmt.*,

514 F. App'x 104, 105 (3d Cir. 2013) (affirming dismissal of a complaint because the plaintiff

sought to "relitigate the merits of his termination" rather than correct personnel records).  Parra

Rodriguez's requested relief is a substantive challenge to Defendants' decision to terminate her

record rather than merely correcting the accuracy of that record.

> The Privacy Act permits a person to contest the accuracy of administrative
> records. It supposes that there is a distinction between "records" and "decisions."
> So if, for example, the Civil Aeronautics Board revoked a pilot's license after
> finding that he had performed a barrel roll 500 feet over the stands of Soldier
> Field in Chicago, the (ex) pilot could use the Privacy Act to ensure that the record
> said that the offending maneuver took place at a height of 500 feet rather than,
> say, 50 feet (which would have posed much greater risk to the audience). He
> could not use the Privacy Act to contest the decision that he did indeed perform a
> low-level stunt—for the document recording that decision would be a wholly
> accurate rendition of what the CAB concluded. If an agency errs, the right
> response is not to rewrite history, changing the record in Orwellian fashion to
> pretend that it reached some other conclusion. **The right response to error is to
> correct the disposition under the Administrative Procedure Act.**

*Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994)

(emphasis added).  "[T]he Privacy Act does not permit a court to alter documents that accurately

reflect an administrative action, no matter how contestable the conclusion may be."  *Id.*

Defendants' position that the Privacy Act precludes Parra Rodriguez from challenging

their actions under the APA is unsupported by caselaw and the Privacy Act itself.  The Supreme

Court recently held that the Privacy Act and other laws "can coexist harmoniously" and that

parties face a "heavy burden" in showing one statute "displaces" a second. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow.") (internal citation and quotation marks omitted). In *Doe v. Chao*, the Supreme Court noted how "[t]he Privacy Act says nothing about standards of proof governing equitable relief," and opined that "this inattention is explained by the general provisions for equitable relief within the Administrative Procedure Act (APA), 5 U.S.C. § 706." 540 U.S. 614, 619 n.1 (2004). The Supreme Court's reference to the Privacy Act incorporating the APA's equitable relief standard of proof supports the inference that the two statutes "coexist harmoniously" rather than conflict. *Id.*; *Kirtz*, 601 U.S. at 63. Additionally, district courts have held that, in certain situations, plaintiffs must seek judicial review under the APA before seeking relief under the Privacy Act. *See White v. U.S. Civ. Serv. Comm'n*, 589 F.2d 713, 715 (D.C. Cir. 1978) (holding an amendment action under the Privacy Act was "inappropriate and premature" because plaintiff had not yet sought judicial review under the APA.). *See also All. for Retired Americans v. Bessent*, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) ("[T]he availability of a Privacy Act suit for damages does not take this case outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims."). The Privacy Act does not trigger the sovereign immunity waiver exception in the APA because Defendants have not met the "heavy burden" of showing that the Privacy Act displaces the APA. *Kirtz*, 601 U.S. at 63.

Defendants also contend that "APA review is unavailable here because there is no final agency action before the Court." Doc. No. 26 at 2, 15-17. Under the APA, "an appeal to

'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (quoting 5 U.S.C. § 704). There is no statute or agency regulation requiring appeal of a SEVIS record termination before review and Defendants' termination of a SEVIS record is not "made inoperative pending that review." *Id.  See also Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019) ("The order terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review."); *Doe v. Noem*, 2025 WL 1161386, at *6 n.5 (W.D. Va. Apr. 21, 2025) (holding the termination of SEVIS record is final agency action which a court has jurisdiction to review). The same reasoning applied in *Jie Fang* applies here:  (1) "there is no statutory or regulatory requirement that a student seek reinstatement" of their SEVIS record; (2) "there is no mechanism to review the propriety of the original [SEVIS] termination order[;]" and (3) "uninitiated removal proceedings cannot be a prerequisite to finality when there is no guarantee that such proceedings will ever occur." *Jie Fang*, 935 F.3d at 182-84.

Contrary to Defendants' argument, legal consequences *do* flow from SEVIS record termination.   When a SEVIS record is terminated: (1) a student loses all on- and off-campus employment authorization; (2) the student cannot re-enter the United States; and (3) ICE agents may investigate the student to confirm their departure.  U.S. Dep't of Homeland Sec., *Terminate a Student – Effects of Termination* (Nov. 7, 2024), https://perma.cc/2NZT-9EH5 (last visited May 1, 2025); Doc. No. 26 at 16.

Defendants' SEVIS record termination is "final agency action for which there is no other adequate remedy in a court [and is] subject to judicial review."  5 U.S.C. § 704.  *See also Du v.*

*United States Dep't of Homeland Sec.*, 2025 WL 1220254, at *5 (D. Conn. Apr. 28, 2025) (holding defendants' termination of plaintiffs' SEVIS record was final agency action).

For the foregoing reasons, I conclude that Parra Rodriguez has demonstrated a clear and substantial likelihood of success on the merits of her claim that her SEVIS termination was arbitrary, capricious, and unlawful under the APA.  Because Parra Rodriguez maintained her status at all relevant times, Defendants terminated her SEVIS record without statutory and regulatory authority and failed to provide an explanation for why they terminated her SEVIS record.

B.  Whether Parra Rodriguez will experience irreparable harm absent injunctive relief

"Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Lazor v. Univ. of Connecticut*, 560 F. Supp. 3d 674, 678 (D. Conn. 2021) (quoting *United States SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014)) (internal quotation marks omitted).

Defendants argue "the Supreme Court has held that the possibility of detention and deportation 'cannot constitute the requisite irreparable injury' necessary for preliminary injunctive relief."[5]  Doc. No. 26 at 3 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Parra Rodriguez does not rely solely on her potential removal to prove she will suffer irreparable harm—Parra Rodriguez demonstrates "[t]here is an actual and imminent risk that she will be forced to disenroll from her studies, leave the country immediately, and abandon her Ph[.]D." Doc. No. 4-1 at 14.  *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 14.  Parra Rodriguez

---

[5] Defendants both misquote and misstate the Supreme Court's holding in *Nken v. Holder*, 556 U.S. 418 (2009), which does not address detention.  *Id.* at 435 ("[T]he burden of removal *alone* cannot constitute the requisite irreparable injury.") (emphasis added).

establishes that, if she stays and "accumulate[s] unlawful presence, it is likely that she will be precluded from obtaining an F-1 visa to continue her studies in the future." *Id.* Additionally, she risks being "subjected to detention, removal proceedings, and deportation." *Id.* Finally, she continues to "suffer substantial emotional and psychological distress" due to Defendants' actions. *Id.*

The myriad of cases around the United States involving international students being detained and facing removal proceedings proves there is nothing speculative or hypothetical about the irreparable harm Parra Rodriguez is experiencing and may continue to experience. *See Ozturk v. Trump*, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) (ordering ICE to transfer a Tufts University student detained in ICE custody back to the District of Vermont); *Khalil v. Joyce*, 2025 WL 849803, at *3-4 (S.D.N.Y. Mar. 19, 2025) (describing how a Columbia University student was detained by ICE and moved from New York to New Jersey to Louisiana). *See also* Ashley Mowreader, *International Student Visas Revoked*, Inside Higher Ed., https://perma.cc/N9PM-SSUH (last visited May 1, 2025).

Dozens of courts have held termination of a student's SEVIS record under similar or identical circumstances to Parra Rodriguez's constitutes irreparable harm and granted preliminary relief based on that finding. *See Doe v. Noem*, 2025 WL 1161386, at *6-7 (W.D. Va. Apr. 21, 2025) (finding irreparable harm where a student's SEVIS record was terminated and entering a TRO); *Ajugwe v. Noem*, 2025 WL 1148689, at *3-4 (M.D. Fla. Apr. 18, 2025) (same); *Isserdasani v. Noem*, 2025 WL 1118626, at *5-6 (W.D. Wis. Apr. 15, 2025) (same); *Roe v. Noem*, 2025 WL 1114694, at *3-5 (D. Mont. Apr. 15, 2025) (same); *Doe v. Noem*, 2025 WL 1134977, at *8-9 (E.D. Cal. Apr. 17, 2025) (same); *Oruganti v. Noem*, 2025 WL 1144560, at *3-8 (S.D. Ohio Apr. 18, 2025) (same); *Ratsantiboon v. Noem*, 2025 WL 1118645, at *2-3 (D.

Minn. Apr. 15, 2025) (same); *Patel v. Bondi*, 2025 WL 1134875, at *2-3 (W.D. Pa. Apr. 17, 2025) (same); *Chen v. Noem*, 2025 WL 1163653, at *10-13 (S.D. Ind. Apr. 21, 2025) (same); *Daou v. Noem*, 2025 WL 1148687, at *3-4 (M.D. Fla. Apr. 18, 2025) (same).

    1.  *SEVIS record reinstatements and new ICE policy*

On April 25, 2025, Defendant ICE represented that it is changing course in cases where it has recently terminated nonimmigrant students' SEVIS records. *See generally Doe v. Trump et al.*, Dkt. No. 4:25-cv-03140-JSW, Doc. No. 47 (Attached as Exhibit B to this Order.). Defendants asserted they were "developing a policy that will provide a framework for SEVIS record terminations." *Id.* at 4. "Until such a policy is issued, the SEVIS records for the plaintiffs in these above-captioned cases (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active." *Id.* ICE stated that the "SEVIS records will remain active until ICE's new policy is implemented." *Id.*

On April 30, 2025, it became publicly available that ICE internally circulated a broadcast message entitled "SEVIS Notice – Policy Regarding Termination of Records" on April 26, 2025. *Patel v. Lyons*, Dkt. No. 1:25-cv-1096, Doc. No. 16-1 at 2 ("April 29 SEVIS Notice") (Attached as Exhibit C to this Order.). Specifically, the policy states that "[a] terminated record in SEVIS could indicate that the nonimmigrant no longer maintains F . . . status." Ex. C, April 29 SEVIS Notice at 2. The new policy does not contain a process for notice and opportunity to respond prior to termination of SEVIS records by ICE. *Id.* The policy does explicitly list the reasons for which SEVP, administered by Defendant ICE, can terminate SEVIS records. *Id.* (listing exceeded unemployment time, failure to comply with I-515A, failure to repay the I-901 fee chargeback, failure to report while on OPT, no show, school withdrawn, violation of change of

status requirements, change of status approved, evidence of a failure to comply with the terms of nonimmigrant status exists, and U.S. Department of State visa revocation).

The parties agree that Defendants reinstated Parra Rodriguez's SEVIS record.  That fact does not moot this action.  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).  "Such abandonment is an important factor bearing on . . . whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968).

Defendants' voluntary reinstatement of Parra Rodriguez's SEVIS record does not show her SEVIS record termination cannot "reasonably be expected to recur."  *Id.*  Although ICE reinstated Parra Rodriguez's SEVIS record, Defendants' actions have left her without a visa and with a gap in her SEVIS record. Further, ICE implemented a new policy that would allow Defendants to terminate her SEVIS record *again* without her formal notice and the opportunity to be heard.  Without injunctive relief, Parra Rodriguez is once again at risk of losing her ability to complete her Ph.D. program, detention, and removal due to a potentially arbitrary, capricious, and unlawful decision by Defendants.

Defendants claim, without any legal citation, that "[t]erminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States."  Watson Decl., Doc. 27 ¶ 10; Doc. No. 26 at 6, 16.  "Such a statement, standing alone, cannot suffice to satisfy the heavy

burden of persuasion which we have held rests upon those in [Defendants'] shoes." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203. Further, that proposition runs counter to what Defendants argue is the purpose of SEVP and SEVIS records: to "manage[] and track[] nonimmigrants in the F . . . categor[y]" and to "closely monitor foreign students . . . by vigorously enforcing statutory and regulatory requirements." Watson Decl., Doc. 27 ¶ 3.

Defendants' assertion that terminating a SEVIS record does not affect a nonimmigrant's legal status rings hollow when considering the practical implications of a SEVIS record termination and Defendants' own policy. Effectively, SEVIS records are how Defendants monitor a nonimmigrant student's legal status—therefore, a termination of a SEVIS record, as viewed by SEVP, is a termination in lawful status. *See* 9 FAM 402.5-4(B) ("[T]he SEVIS record is the *definitive record of student* or exchange visitor *status and visa eligibility*.") (emphasis added). "When SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis." Ex. C, April 29 SEVIS Notice at 3. Once a SEVIS record is terminated, ICE has the discretion to investigate and "initiate removal proceedings pursuant to INA § 237(a)(1)(C)(i) based on evidence that a nonimmigrant student is not complying with the terms of their nonimmigrant status." *Id.* When Parra Rodriguez's SEVIS record was terminated and her visa revoked, Defendants could have, based on their own "definitive records," detained and deported her. *See* 9 FAM 402.5-4(B). Practically, ICE's April 26 policy directly contradicts Defendants' claim that their termination of a SEVIS record does not affect a students' legal status because a SEVIS record termination can lead directly to removal. Ex. C, April 29 SEVIS Notice at 3.

ICE's new policy still allows Defendants' to unilaterally terminate her SEVIS record due to the revocation of her F-1 visa. *Id.* ("If [the U.S. State Department] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)."). Until she applies and is approved for a new visa, which may take up to 180 days, Defendants may terminate her SEVIS record at any time. 8 U.S.C § 1571(b) (stating an immigration benefit application should be processed no later than 180 days after its filing). If Defendants terminate her SEVIS record again, she will be ineligible for a visa and susceptible to removal proceedings. 9 FAM 402.5-4(B) ("You should issue [F-1 visas] only to visa applicants whose SEVIS record indicates a SEVIS status of 'initial' or 'active.'"); Ex. C, April 29 SEVIS Notice at 3 ("When [the U.S. State Department] revokes a [nonimmigrant student's] visa with immediate effect, ICE *should* take steps to initial removal proceedings.") (emphasis added). Further, Parra Rodriguez's SEVIS record is still tarnished by a 17-day gap in her lawful status.[6]

Parra Rodriguez successfully alleges injuries "that [are] neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999). She now has a 17-day gap in her SEVIS record due to Defendants' termination of her SEVIS record and her visa remains revoked. I therefore conclude Parra Rodriguez would face irreparable harm absent

---

[6] One immigration benefit to which Parra Rodriguez is no longer entitled due to that 17-day gap is a program extension granted by Yale's DSO. 8 C.F.R. § 214.2 ("An F–1 student who is unable to meet the program completion date on the Form I–20 or successor form may be granted an extension by the DSO if the DSO certifies that the student has *continually maintained status* and that the delays are caused by compelling academic or medical reasons, such as changes of major or research topics, unexpected research problems, or documented illnesses.") (emphasis added).

injunctive relief, despite reinstatement of her SEVIS record.  *See Du v. United States Dep't of Homeland Sec.*, 2025 WL 1220254, at \*5 (D. Conn. Apr. 28, 2025) (finding irreparable harm and granting plaintiff students' motion for a TRO despite recent reinstatement of SEVIS records); *Doe No. 1 v. Noem*, 2025 WL 1224783, at \*5-7 (E.D. Pa. Apr. 28, 2025) (same).

C. <u>Whether the balance of equities tips in Parra Rodriguez's favor and whether an injunction is in the public interest</u>

"Where, as here, the government is a party to the suit, the final two [preliminary injunction] factors merge."  *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).  Parra Rodriguez has also demonstrated that the balance of the hardships tip in her favor and that the public interest would not be disserved by issuing a preliminary injunction.

Defendants claim their interest in "enforce[ing] the provisions of the Immigration and Nationality Act [("INA")] relating to the Department's ability to update and maintain the information in SEVIS" will be "infringed" if I grant Parra Rodriguez preliminary relief.  Doc. No. 26 at 25.  However, Parra Rodriguez's SEVIS record was not lawfully terminated pursuant to the INA or relevant regulations.  Therefore, restoring her SEVIS record to the status it was before Defendants terminated it on April 9, without any gaps in active status, will not infringe on Defendants' interest.  Further, granting Parra Rodriguez the relief she requests will do nothing to prevent Defendants from continuing to "develop and administer" SEVP.  *Id.* at 24. Conversely, refusing to enjoin Defendants would result in Parra Rodriguez losing the integrity of her SEVIS record which could result in harming her chances in successfully reapplying for a visa and obtaining other future immigration benefits.

Additionally, there is substantial public interest in ensuring government agencies abide by federal laws and regulations.  *See New York v. Trump*, 490 F. Supp. 3d 736, 747

(S.D.N.Y. 2020); *Islam v. Cuomo*, 475 F. Supp. 3d 144, 160 (E.D.N.Y. 2020). "[T]here is generally no public interest in the perpetuation of unlawful agency action. . . . To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal citations and quotation marks omitted); *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018).

Parra Rodriguez has no criminal convictions. She poses no threat to the community to which she has belonged for almost two years. In fact, enjoining Defendants, and thereby upholding the rule of law, will affirmatively serve the public interest.

## V.    **Requested Relief**

A prohibitory preliminary injunction seeks to "maintain the status quo," whereas a mandatory injunction "modif[ies] the status quo." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. . . . A mandatory injunction, in contrast, is said to alter the status quo . . . ."). The "status quo" is "defined as 'the last peaceable uncontested status preceding the present controversy.'" *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 105 (2d Cir. 2024) (citing *Mastrio v. Sebelius*, 768 F.3d 116, 121 (2d Cir. 2014)).

I agree with Parra Rodriguez that her requested relief maintains the status quo because it restores her SEVIS record and F-1 status to "the last peaceable uncontested status preceding the present controversy." *JLM Couture, Inc. v. Gutman*, 91 F.4th at 105. *See* Doc. No. 4-1 at 10.

Thus, I construe Parra Rodriguez's requested relief as a prohibitory preliminary injunction, rather than a mandatory preliminary injunction.

However, Parra Rodriguez also meets the heightened standard of review for a mandatory preliminary injunction if I consider her requested relief as "alter[ing] the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). As described above, Parra Rodriguez has demonstrated a clear and substantial likelihood of success on the merits. *See Doninger v. Niehoff*, 527 F.3d 41, 47-48 (2d Cir. 2008).

In her motion for a TRO, preliminary injunction, or stay, Parra Rodriguez requests the following relief: (1) An order requiring Defendants to restore Para Rodriguez's SEVIS record to prevent ongoing harm to her and set aside their termination decision, pending resolution of this litigation; (2) An injunction preventing Defendants from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against her or detaining her pursuant to her immigration status; and (3) An injunction preventing Defendants from unlawfully terminating Parra Rodriguez's F-1 student status under the SEVIS system. Doc. No. 4 at 1; Doc. No. 4-1 at 6. One of Parra Rodriguez's requests is moot: her SEVIS record is restored. However, her SEVIS record contains a 17-day gap that was not present before Defendants terminated her SEVIS record on April 9. Parra Rodriguez is also still at risk of having her SEVIS record terminated again and being subject to removal proceedings because her visa was revoked.

Defendants argue that I lack authority to grant Parra Rodriguez's requested relief because "[t]he INA divests this Court of jurisdiction over discretionary decisions concerning DHS's decision to initiate removal proceedings." Doc. No. 26 at 20; 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").  The Second Circuit holds that whether the district court has jurisdiction in a suit brought against immigration authorities turns on the substance of the relief a plaintiff seeks and whether a plaintiff seeks review of a discretionary decision by the Attorney General.  *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Liu v. I.N.S.*, 293 F.3d 36, 41 (2d Cir. 2002) (citing *Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir. 2001) ("[Section 1252(g)] limits the power of federal courts to review the discretionary decisions of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.")).  *See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) (reading section 1252(g) narrowly and stating it applies to only a limited subset of deportation claims).

Parra Rodriguez does not seek relief related to ongoing removal proceedings and is not challenging the Attorney General's discretionary authority; she seeks review of Defendants' unlawful decision to terminate her SEVIS record and the subsequent consequences stemming from this termination.  Courts have held similar challenges to not fall under section 1252(g)'s purview.  *See Ozturk v. Trump*, 2025 WL 1145250, *10, 14-15 (D. Vt. Apr. 18, 2025) (holding that 8 U.S.C. § 1252(g) does not limit the court's review where plaintiff raised constitutional and legal challenges to her detention that are separate from removal proceedings); *Doe v. Noem*, 2025 WL 1134977, at *7 (E.D. Cal. Apr. 17, 2025) ("[H]ere, plaintiff seeks a temporary stay preventing removal, which is permitted under 8 U.S.C. § 1252(g) where the basis for the stay is distinct from how the government's prosecutorial discretion was deployed."); *Chen v. Noem*, 2025 WL 1163653, at *10 (S.D. Ind. Apr. 21, 2025)  ("The Court concludes, at least at this stage, that it may enjoin Defendants from imposing any consequences, including detention and

removal, of the termination of Chen's SEVIS record and F-1 status.") (collecting cases where similar injunctive relief ordered).

Therefore, I enjoy jurisdiction to order her requested relief and to enjoin Defendants because Parra Rodriguez's request for relief does not "aris[e] from [a] decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders under the INA.

## VI.    Security

The Second Circuit "reject[s] the argument that a bond is always required when a preliminary injunction is granted." *Colgan Financial Group, Inc. v. First 100, LLC*, 2014 WL 12748082, at *1 (D. Conn., 2014) (citing *Ferguson v. Tabah*, 288 F. 2d 665, 675 (2d Cir. 1961)). A district court has "wide discretion" to waive bond "where there [is] no proof of likelihood of harm." *Ferguson*, 288 F. 2d at 675.  Some courts will also consider "the strength of a movant's case in analyzing the likelihood of harm to a potentially wrongfully enjoined nonmovant." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 203 (E.D.N.Y. 2013)); *Doctor's Assocs. LLC v. Hai*, 2019 WL 2385597, at *5 (E.D.N.Y. June 6, 2019).  *See also New York City Triathlon, LLC v. NYC Triathlon Club*, Inc., 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) ("Defendant has not demonstrated it will likely suffer any harm absent the posting of a bond, and the likelihood of success on the merits is overwhelming.").

I exercise my discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time because Parra Rodriguez brings strong claims against Defendants and the likelihood of harm to Defendants is almost nonexistent.

## VII.    Conclusion

For the foregoing reasons, Parra Rodriguez's motion for a preliminary injunction is **granted**.  Doc. No. 4.  Accordingly, **it is ORDERED** that the Defendants, their officers, agents, servants, employees, and attorneys, as well as all persons in active concert or participation with them:

(1) Shall restore Parra Rodriguez's SEVIS record and set aside their termination decision so there are no gaps in her SEVIS record;

(2) Are enjoined from terminating Parra Rodriguez's SEVIS record; and

(3) Are enjoined from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against Parra Rodriguez or detaining her pursuant to her immigration status

until final judgment is entered in this case.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of May 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

26